## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE NATIONAL GRANGE<br>OF THE ORDER OF<br>PATRONS OF HUSBANDRY,<br><br>                     Plaintiff,<br>   v.<br><br>WESTWOOD PARTNERS L.L.C.<br><br>   and<br><br>BRIAN POWELL,<br><br>               Defendants. | Case No.<br><br><br>**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN, FEDERAL TRADEMARK COUNTERFEITING, AND BREACH OF CONTRACT** |

## COMPLAINT

Plaintiff, The National Grange of the Order of Patrons of Husbandry ("National Grange"), a Washington D.C. non-profit corporation located at 1616 H Street NW, Washington DC 20006, states the following for its complaint against Defendants, Westwood Partners L.L.C. ("Westwood Partners") and Brian Powell, doing business at 31 Westwood Ave., Westwood, New Jersey 07675:

## NATURE OF THE SUIT

1.    This is an action for trademark infringement, unfair competition and false designation of origin, and counterfeiting, brought under the Lanham Act, 15 U.S.C. § 1051 et seq., and for breach of contract. This action is brought by Plaintiff National Grange to enjoin Defendants, a former licensee of National Grange and its Managing Member, from continuing to use Plaintiff National Grange's GRANGE trademarks, and for other relief.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367, as the claims asserted herein present federal questions under the Lanham Act and pertain to trademarks and unfair competition, and the Court has supplemental jurisdiction over the breach of contract claim.

3.    Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because it is where Defendants maintain their principal place of business, and/or where a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred.

## THE PARTIES

4.    Plaintiff National Grange is a District of Columbia non-profit corporation with a principal place of business at 1616 H Street N.W., Washington, DC 20006.

5.    Defendant Westwood Partners is a Limited Liability Company organized and existing under the laws of Delaware, with a principal place of business at 31 Westwood Avenue, Westwood, New Jersey 07675, and doing business as the restaurant "Grange."

6.    Defendant Brian Powell ("Powell") is the managing member of Westwood Partners, who operates the restaurant "Grange."

## BACKGROUND

### Plaintiff and its Intellectual Property

7.    Plaintiff National Grange, a nonprofit organization founded on December 4, 1867 to promote agricultural interests, is the country's oldest national fraternal agricultural organization. National Grange's 162,000 members provide a variety of goods and services to families and communities, through an extensive network of more than 2,500

state, county, and community Grange chapters, and numerous licensees, located across the country.

8. Plaintiff National Grange owns numerous federally registered trademarks, which it uses to provide a variety of goods and services, including food-related goods and services, such as provision of banquet and convention hall facilities, catering services, and restaurant services.

9. Plaintiff National Grange owns the following valid, subsisting federal trademark registrations featuring the word GRANGE (collectively, the "GRANGE Marks"), many of which are incontestable:

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
| GRANGE | 3,792,978 | Restaurant services. |
| GRANGE | 3,974,240 | Cookbooks. Farmers' markets. Catering services; providing community centers for social gatherings and meetings, at which meals are served; providing social meeting, banquet and social function facilities; provision of fair and exhibition facilities. |
| GRANGE | 1,872,429 | Credit cards, posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment and recreational opportunities for deaf individuals, and song books. Providing educational assistance and recreational opportunities to deaf individuals. Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, and providing medical assistance to deaf individuals. |
| GRANGE | 4,135,668 | Jewelry; Ornamental pins. |
| GRANGE | 4,266,408 | Dress shirts, Hats, Jackets, Short-sleeved or long-sleeved t-shirts, Sweat shirts and Ties, all sold or distributed in connection with a national fraternal organization, and specifically excluding footwear. |

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| THE OLD GRANGE RESTAURANT | 3,792,976 | Restaurant services. |
| NATIONAL GRANGE | 1,817,894 | Credit cards, posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment and recreational opportunities for deaf individuals, and song books.  Providing educational assistance and recreational opportunities to deaf individuals.  Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, and providing medical assistance to deaf individuals. |
| THE GRANGE FOUNDATION | 1,782,923 | Philanthropic services; namely, endowing scholarships and funding scientific, educational and charitable activities. |
| P OF H GRANGE | 4,021,798 | Cookbooks. Farmers' markets.  Catering services; providing community centers for social gatherings and meetings, at which meals are served; providing social meeting, banquet and social function facilities; provision of fair and exhibition facilities. |
| P OF H GRANGE | 1,824,368 | Posters, and publications; namely, newsletters, brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment, and recreational opportunities for deaf individuals, and song books.  Providing educational assistance and recreational opportunities to deaf individuals. Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, and providing medical assistance to deaf individuals. |
| P OF H GRANGE | 4,062,361 | Jewelry; Ornamental pins. Dress shirts, Hats, Jackets, Short-sleeved or long-sleeved t-shirts, Sweat shirts and Ties, all sold or distributed in connection with a national fraternal organization, and specifically excluding footwear. |
| NATIONAL | 1,816,827 | Posters, and publications; namely, newsletters, |

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
| GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY | | brochures, and pamphlets about family life in farm, rural and suburban communities, national legislative affairs, and education, medical treatment and recreational opportunities for deaf individuals, and song books.  Providing educational assistance and recreational opportunities to deaf individuals. Association and charitable services; namely, advancing the quality of family life in farm, rural and suburban communities, and providing medical assistance to deaf individuals. |

10.  Plaintiff National Grange has been using some of the GRANGE Marks since the mid-1800's, and is currently using these marks in interstate commerce on and in connection with a variety of goods and services.  These include the GRANGE trademarks for restaurant and catering services, and for providing community centers for social gatherings and meetings (Reg. Nos. 3,792,978; 3,792,976; 3,974,240; and 4,021,798).

11.  Through long and continuous use, and an extensive investment of time, effort, and money over the last 145 years, Plaintiff National Grange has built up a high degree of distinctiveness and valuable goodwill in its name.

12.  Its GRANGE Marks have become well known to members of the public, who identify the National Grange as the source of goods and services offered under the GRANGE Marks. Indeed, in the United States, the GRANGE Marks are synonymous with Plaintiff National Grange and its goods and services. Dictionaries in the United States define "Grange" as the National Grange and its Grange chapters. *E.g., American Heritage Dictionary of the English Language ("1. Capital G.   a. The Patrons of Husbandry, an association of farmers founded in the United States in 1867. b. One of its branch*

5

*lodges.")* The GRANGE Marks thus represent substantial goodwill of great importance and value to Plaintiff National Grange.

**Plaintiff National Grange's Contract With Defendant Westwood Partners, LLC**

13.  On October 18, 2013, Plaintiff and Defendant Westwood Partners entered into a contract that permitted Defendant Westwood Partners to use Plaintiff's GRANGE trademark in connection with its bar and restaurant services, at a restaurant in Westwood, New Jersey named "Grange" ("the Agreement"). *Agreement between National Grange and Westwood Partners* attached as Exhibit A.

14.  Defendant Westwood Partners repeatedly failed to pay the fees when due as required under the terms of the Agreement.

15.  On December 5, 2014, after repeated attempts by Plaintiff to communicate with Defendants and to persuade Defendants to cure the default, Plaintiff terminated the Agreement, thereby terminating Defendants' ability to use the GRANGE trademark.

16.  Upon termination of the Agreement, Defendants were no longer authorized or permitted to continue using the GRANGE trademark, which is owned by Plaintiff National Grange.

17.  Nonetheless, Defendants continue to refer to the restaurant they operate as "Grange" or "Grange Westwood" and continue to use the GRANGE trademarks.

18.  Defendants' continued use of the GRANGE trademarks in the name of their restaurant, and in connection with their goods and services, misrepresents to the public that Defendants are still affiliated with Plaintiff National Grange, and constitutes trademark infringement, false designation of origin, and counterfeiting.

19.    Plaintiff National Grange seeks to enjoin Defendants and those acting in active concert with them from using any of the GRANGE Marks in the name of the restaurant, on its goods, or in connection with its services.

## COUNT I
## BREACH OF CONTRACT

20.    Plaintiff National Grange repeats and re-alleges each and every factual averment in the preceding paragraphs of this Complaint, and incorporates them by reference.

21.    On October 18, 2013, Defendant Westwood Partners entered into an Agreement with Plaintiff National Grange to use the mark GRANGE as the name of its restaurant. Defendant Powell, the Managing Member of Westwood Partners who operates the restaurant, signed the Agreement.

22.    Under the terms of the Agreement, Defendant Westwood Partners was obligated to pay an annual fee of $1,000 to Plaintiff during the Agreement's initial ten (10) year term. As an accommodation to Defendant, Plaintiff agreed to allow Defendant to make those annual payments in two installments: the first due on the Execution Date of the Agreement (October 18th) and the second due six months after.

23.    Also under paragraphs 3 and 4 of the Agreement, Defendant Westwood Partners agreed to cooperate and facilitate Plaintiff's quality control measures, including by supplying Plaintiff promptly with specimens of its promotional literature and other information regarding its provision of goods and services under the GRANGE mark.

24.    Defendant Westwood Partners failed to make the initial payment on October 18, 2013.

25.     On February 28, 2014, after Plaintiff National Grange repeatedly urged it to fulfill its obligations under the Agreement, Defendant Westwood Partners finally paid the initial installment payment.

26.     Despite numerous written and voicemail reminders from Plaintiff, Defendant Westwood Partners did not pay the second installment for the first year, due on April 18, 2014, or the first installment for the next year, due on October 18, 2014.

27.     Under the terms of the Agreement, for purposes of quality control, Plaintiff also repeatedly requested that Defendant Westwood Partners produce specimens of its uses of the GRANGE trademark in connection with its goods and services. Defendants failed to provide these specimens. Plaintiff nevertheless performed its own independent investigation of Defendant Westwood Partners' provision of goods and services under the GRANGE mark.

28.     On or about September 16, 2014, Plaintiff wrote to Defendant Powell, advising him that Defendant Westwood Partners was in default, and that it had thirty (30) days to cure the default, pursuant to paragraphs 8 and 9 of the Agreement. *Sept. 16, 2014 Letter* attached as Exhibit B.

29.     On or about October 28, 2014, Plaintiff wrote to Defendant Powell, again advising him that the Agreement was in default, and that Westwood Partners had thirty (30) days to cure the default.

30.     On or about December 5, 2014, Plaintiff wrote to Defendants, terminating the Agreement and instructing Defendants to cease all use of the GRANGE mark. *Dec. 5, 2014 Letter of Termination* attached as Exhibit C.

31.     Plaintiff, through its Counsel, contacted Defendant Powell by phone on February 26,

        2015, and explained that Defendant Westwood Partners had defaulted on the Agreement

        due to non-payment, and that Defendants were required to either pay the outstanding

        license fees or cease use of the GRANGE marks. Defendant Powell indicated that if it

        was a matter of paying fees past due, he could handle it personally.

32.     But thereafter, Defendants failed and refused to pay the fees due under the Agreement.

33.     Finally, on or about March 12, 2015, Plaintiff wrote a final email to Defendants regarding

        termination of the Agreement. Once again, Defendants did not reply.

34.     Plaintiff National Grange has performed all of its obligations to Defendants under the

        parties' Agreement.

35.     Defendant Westwood Partners has breached its contract with Plaintiff by failing to pay

        fees due under the Agreement.

36.     Under paragraph 18 of the Agreement, the termination precludes Defendants from having

        any right, authorization, or permission to continue using the GRANGE trademark in its

        name, on its goods, and in connection with its services.

37.     Despite the termination of its Agreement from the National Grange, and the National

        Grange's demand that it cease using the GRANGE trademark, Defendants continue to

        use the GRANGE name as the name of their restaurant, on goods, and in connection with

        its services as if still affiliated with the National Grange. For example:

        a.  Defendants continue to display the GRANGE mark on their website

            http://grangewestwood.com/, on restaurant premises, and on its operational,

            marketing and promotional collateral.

     b.   Defendants use the GRANGE trademark, referring to their restaurant as the "Grange," in public media and in other external communications, such as its social media.

     c.   Defendants participate in highly visible events using the GRANGE trademark, such as the restaurant's alleged participation in a Food Network production, and promote special events at their restaurant using the GRANGE trademark.

38.    Defendants' continued use of GRANGE trademark will likely lead to confusion among members of the public, since they use the GRANGE name to offer food and beverage goods and services to the public, just as National Grange chapters and authorized licensees do.

39.    Defendants' continued use of the GRANGE trademark, despite the termination of the Agreement and Plaintiff National Grange's demand that they cease using the GRANGE trademark, is causing harm and damage to Plaintiff, as it falsely suggests continued affiliation with the National Grange.

40.    As a result of Defendant Westwood Partners' breach of contract, Plaintiff has been irreparably harmed and is entitled to injunctive relief.

41.    In addition, Plaintiff has suffered monetary damages.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
### (Lanham Act § 32, 15 U.S.C. § 1114)

42.    Plaintiff National Grange repeats and re-alleges each and every factual averment in the preceding paragraphs of this Complaint, and incorporates them by reference.

43.    Since the termination of the Agreement with the National Grange, Defendants no longer have the right, authorization, or permission to use the GRANGE trademark.

44.   Defendants know, have reason to know, and should know that upon the termination of the Agreement, they are not authorized or permitted to use the GRANGE trademark.

45.   Plaintiff National Grange has demanded that Defendants cease and desist using the GRANGE trademark, but Defendants nonetheless continue to do so to market their restaurant and food-related goods and services, in violation of Plaintiff National Grange's exclusive rights in the GRANGE Marks.

46.   Defendants' continued use of the GRANGE trademark is likely to confuse and deceive members of the public into believing, falsely, that the goods and services offered by Defendants emanate from an authorized Grange affiliate or licensee, and/or that Defendants are associated or affiliated with Plaintiff, or are sponsored or endorsed by Plaintiff.

47.   Defendants' continued use of the GRANGE trademark falsely suggests continued affiliation with the National Grange, and will cause confusion with other authorized affiliates and licensees of the National Grange.

48.   The prominent display of the GRANGE trademark by Defendants on their website, signage, and in other promotional materials and in connection with events sponsored by Defendants unfairly trades on the goodwill associated with Plaintiff National Grange.

49.   The infringing marks used by Defendants are identical or confusingly similar to the GRANGE Marks and are used to designate goods and services that are the same as or substantially similar to those provided by Plaintiff and its authorized affiliates and licensees. Defendants provide these goods and services to the same classes or types of consumers and members of the public as Plaintiff or its authorized affiliates and

licensees.  This use is likely to weaken the ability of Plaintiff National Grange to identify and distinguish its own goods and services.

50.     Plaintiff National Grange no longer has control over Defendants' use of the GRANGE Marks, or over the quality of goods and services they provide.  Such uncontrolled use places the National Grange's marks, reputation, and goodwill at risk of serious injury.

51.     Defendants' activities, as described above, constitute trademark infringement of Plaintiff National Grange's rights in its federally registered GRANGE Marks under 15 U.S.C. § 1114(a).

52.     Moreover, Defendants have had actual notice of the National Grange's trademark rights, yet have knowingly and intentionally continued its use of the GRANGE trademark, causing confusion, mistake, and deception in order to reap the benefit of the goodwill and reputation of the National Grange.

53.     As a direct and proximate result of Defendant's willful and deliberate conduct, Plaintiff National Grange has suffered, and will continue to suffer, substantial injuries, loss of goodwill, and damages if Defendant is permitted to continue its willful and deliberate acts of infringement.

## COUNT III
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

54.     Plaintiff National Grange repeats and re-alleges each and every factual averment in the preceding paragraphs of this Complaint, and incorporates them by reference.

55.     Since the termination of the Agreement by the National Grange, Defendants have not had the right, authorization, or permission to use the GRANGE Marks.

56.    Plaintiff National Grange did not authorize Defendants to continue to use the National Grange's GRANGE trademark after the Agreement was terminated, and has demanded that Defendants cease all use of Plaintiff National Grange's trademarks.

57.    Defendants nonetheless willfully continue to use the GRANGE trademark, which falsely suggests a connection to Plaintiff National Grange, in contravention of Plaintiff's rights.

58.    Defendants' use in commerce of the GRANGE trademark after the Agreement was terminated, without the National Grange's consent, constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the National Grange, or as to the origin, sponsorship, or approval of Defendants' goods and services by Plaintiff.

59.    Defendants' continued use of the GRANGE mark falsely suggests continued affiliation with the National Grange, and will cause confusion with other authorized affiliates and licensees of the National Grange.

60.    The infringing marks used by Defendants are identical or confusingly similar to the GRANGE Marks and are used to designate goods and services that are the same as or substantially similar to those provided by Plaintiff and its authorized affiliates and licensees. Defendants provide these goods and services to the same classes or types of consumers and members of the public as Plaintiff or its authorized affiliates and licensees.  This use is likely to weaken the ability of Plaintiff National Grange to identify and distinguish its own goods and services.

61.    Plaintiff National Grange no longer has control over Defendants' use of the GRANGE trademarks, or over the quality of goods and services it provides.  Such uncontrolled use

places Plaintiff National Grange's marks, reputation, and goodwill at risk of serious injury.

62.     Defendants' activities, as described above, constitute unfair competition and false designation of origin under 15 U.S.C. § 1125(a).

63.     As a direct and proximate result of Defendants' willful and deliberate conduct, Plaintiff National Grange has suffered, and will continue to suffer, substantial injuries, loss of goodwill, and damages if Defendants are permitted to continue their willful and deliberate acts of unfair competition and false designation of origin.

**COUNT IV**
**FEDERAL TRADEMARK COUNTERFEITING**
**(Lanham Act § 32(1), 15 U.S.C. § 1114(1))**

64.     Plaintiff National Grange repeats and re-alleges each and every factual averment in the preceding paragraphs of this Complaint, and incorporates them by reference.

65.     Since the termination of the Agreement with the National Grange, Defendants no longer have the right, authorization, or permission to use the GRANGE Marks.

66.     Despite knowledge of Plaintiff National Grange's ownership of the GRANGE Marks, and the termination of Agreement, Defendants continue to use spurious designations that are identical with, or substantially indistinguishable from, the GRANGE Marks on goods and services covered by registrations for the GRANGE Marks, offered to the same classes or types of consumers and members of the public as Plaintiff and its authorized affiliates and licensees.

67.     Defendants have used these spurious designations after the termination of the Agreement, knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale and distribution of their goods and services.

14

68.    After the termination of its authorization to use the GRANGE trademark, and numerous communications from Plaintiff requesting that Defendant cease its use of the GRANGE trademark, Defendants' use of the GRANGE trademark to advertise, promote, offer for sale, distribute and sell its goods and services was and is without the consent of Plaintiff National Grange.

69.    Defendants' unauthorized use of the GRANGE Marks on and in connection with advertisement, promotion, sale, offering for sale and distribution of counterfeit food-related goods and restaurant services constitute Defendants' use of the GRANGE trademark in commerce.

70.    Defendants knowingly and intentionally have made and continue to make unauthorized use of the GRANGE trademark as set forth above, in a manner that is likely to cause confusion, mistake and deception.

71.    Defendants' continued use of the GRANGE mark falsely suggests continued affiliation with the National Grange, and will cause confusion with other authorized affiliates and licensees of the National Grange.

72.    As a result, Defendants continue to unfairly benefit from the National Grange's advertising and promotion, and profit from the reputation of the National Grange and its GRANGE Marks, all to the substantial and irreparable injury of the National Grange, its GRANGE Marks and the substantial goodwill represented thereby.

73.    These acts of Defendants constitute counterfeiting under 15 U.S.C. §§ 1114(1) , 1116(d), and 1127.

74.    As a direct and proximate result of Defendants' willful and deliberate conduct, Plaintiff National Grange has suffered and will continue to suffer substantial injuries, loss of

goodwill, and damages if Defendants are permitted to continue their willful and deliberate acts of counterfeiting.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff National Grange respectfully prays that the Court:

A.    Enter judgment in favor of Plaintiff against Defendants on all claims set forth in this Complaint;

B.    Permanently enjoin Defendants, as well as their agents, successors, assigns, and all persons in active concert or participation with Defendants, from using the GRANGE Marks or any other mark, corporate name or trade name that consists of or contains the word GRANGE, or any other trademarks confusingly similar to the GRANGE Marks in the United States;

C.    Award Plaintiff monetary damages against Defendants, jointly and severally, to include without limitation:

      i.    any and all revenues Defendants have collected as a result of their wrongful conduct;

      ii.    treble damages under 15 U.S.C. § 1117(b); and/or

      iii.    statutory damages under 15 U.S.C. § 1117(c), as may be elected by the National Grange.

D.    Award Plaintiff interest, reasonable attorneys' fees, and costs incurred in maintaining this action, to the fullest extent allowed under law including but not limited to 15 U.S.C. § 1117; and

E.    Award such additional relief as the Court deems just and proper.

16

Dated: May 27, 2015                          SMITH, GAMBRELL & RUSSELL, LLP


                                             By:   s/ Peter G. Goodman
                                                   Peter G. Goodman
                                             1301 Avenue of the Americas, 21st Floor
                                             New York, New York 10019
                                             Phone: (212) 907-9700
                                             Fax:    (212) 907-9865
                                             pgoodman@sgrlaw.com


                                             *Attorneys for Plaintiff*

17